A request by the wife to a childless husband to provide for her by his last will, even to the extent of his whole estate, and her attempt to induce him to do so, do not render the will invalid for undue influence.

2. SAME.

   Where a wife and her husband quarreled and had lived apart, the fact that during a following reconciliation he left her his entire property, to the exclusion of a brother, does not show undue influence on the part of the wife, though he had made pending the separation a will in favor of his brother.

Proceedings in the matter of the probate of the will of William J. Cruger, deceased. Probate decreed.

Alexander & Colby (William Morton Grinnell, of counsel), for petitioners.

Ward, Hayden & Satterlee, for general guardian, contestant.

THOMAS, S. The due formal execution of the paper offered for probate is conceded, and it is not seriously contended that the dece-

dent was lacking in testamentary capacity. The sole beneficiary
and proponent is the widow of the decedent, and the only opposing
interests are a brother and that brother's children, who would take
under a previous will if this will should be refused probate. The
contest is made to rest solely upon a contention that this latest of a
series of wills was procured by undue influence. The burden of es-
tablishing this as a fact rested upon the contestants. To that end
a great mass of testimony was taken of the relations between the
decedent and his wife, extending back for many years, with much
of detail concerning the protracted and serious sickness which ended
in his death. A great deal of testimony concerning the wife tended
to show her to be a woman given to violent outbreaks of temper,
and disposed to assert her rights or pursue her interests with great
vigor and tenacity of purpose. The decedent was, on the other
hand, shown to be of an easy and compliant, if not essentially weak,
character, and the disease or diseases which fastened upon him ren-
dered him exceedingly helpless. It was while the wife was in com-
plete charge of her husband that the will now offered was made.
All of this established quite fully that ample opportunity was afforded
for the exercise of undue influence, but it did not suffice to prove
that the influence actually exercised was of a kind or degree that
would justify any court in declaring the testamentary paper null and
void. The wife of this childless, sick, and dying man was not pre-
cluded by any rule of law from requesting him to make provision
for her by his will, even to the entire extent of his estate, or from
seeking by argument and reasonable persuasion to induce him to
grant such request. I have not been able to find in the entire record
any evidence that could justify me in finding that she exceeded or
that she even came up to the limits of her rights in this respect. On
the contrary, I am led to believe that this last will was the natural
and logical expression of the decedent's sentiments of affection to-
wards his wife, under the facts relating to his estate, as known to
him at the time it was made. Notwithstanding the occasional quar-
rels between the two, it is to be observed that in each and every
of the series of wills before the last, in force for many years before
his death, his entire estate is left so as to be enjoyed by his wife
for her life, with the single exception of one will, which was made
under peculiar circumstances of estrangement, and which was only
in force for a few weeks. This is true of a will made under the
eye and with the approval of the brother now contesting, and while
the husband and wife were living apart from each other. Shortly
prior to the making of the will now offered for probate a substan-
tial change took place in the estate of the decedent. A relative
who had for years taken charge of his property died, leaving his
affairs in a confused condition, and a large loss was discovered to
have been made. The exact extent of that loss was not known,
and could not be ascertained. This relative had been named in the
will then in force as executor. Under such circumstances, it was
not unnatural that a new will should be desired, both by the hus-
band and by the wife, which would give to her more complete pro-
tection against want than would be afforded by a mere life estate
in the husband's shattered fortune. I find no cause for suspicion

in the fact that the decedent and his wife were at a hotel in England when the will was first executed, and that his brother in America was not informed of his exact whereabouts. For many years before this the brothers wandered over the world, each by himself, with the liberty afforded by wealth and leisure to go almost anywhere, but they seldom could be in the same place at the same time. It needed no contrivance to keep them apart, since there is no evidence that either of them had the slightest desire to be together. The brother now contesting parted from the decedent in Monte Carlo some months before the making of this last will, after rendering brotherly and valuable services, but under circumstances likely to cause a feeling of coolness, and, when full opportunity to visit the decedent in New York was given to the brother, substantially the only sign of affectionate regard which he gave was to call upon his sick brother in his bedroom to solicit a loan of money. The letters written by the decedent to his wife while she was in New York and he in England, and there was no opportunity for undue influence, show a tender affection for her, and are entirely consistent with the will. It is not within the province of a court of probate to adjudicate that she was unworthy of his regard or of his benefaction. The objections must be overruled, and the will admitted to probate. The costs of the proponent will be paid out of the estate.

Probate decreed.